## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO.  _____ |
| **and** | ) ) | |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) ) ) | **COMPLAINT FOR PATENT INFRINGEMENT** |
| **Plaintiffs.** | ) ) ) | |
| **v.-** | ) ) | **JURY TRIAL DEMANDED** |
| **MARS TRIGGER, LLC, a Texas limited liability company,** | ) ) ) ) | |
| **and** | ) ) | |
| **PETER BRENNEN, an individual,** | ) ) ) | |
| **Defendants.** | ) | |

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse MaRs Trigger LLC ("Mars") and Peter Brennen ("Brennen") (collectively, "Defendants"), of infringing U.S. Patent No. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent") (collectively, "the Asserted Patents") as follows:

## PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3.      MaRs Trigger is a limited liability company organized under the laws of Texas with an address of 1609 E Main St., Clarksville, TX 75426.

4.      Upon information and belief, Defendant Peter Brennen ("Brennen") is an individual residing at 470 Jeffus St., Deport, TX 75435, who solely operates and directs the complained-of activities at his regular and established place of business at 1609 E Main St., Clarksville, TX 75426.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 283-85.

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7.      Personal jurisdiction over Defendants are proper in this District because the Defendants reside in and have a regular and established place of business in this District, and have therefore purposely availed themselves of the privileges and benefits of the laws of the State of Texas.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in and/or have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

9.      This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent") ("the Asserted Patents"). True and correct copies of the '247 and '784 Patents ("the Asserted Patents") are attached hereto as Exhibits A and B respectively.

10.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable.

11.     The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable.

12.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

13.     Rare Breed is the exclusive licensee of the Asserted Patents.

14.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

15.     Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

16.     Upon information and belief, Defendants were aware that their acts were infringing and were, therefore, willful.

## The Inventions

17.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

18.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

19.    In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until

4

the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

20.     The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

21.     The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

22.     The claims of the patents define the scope of the patented inventions.

## The Infringing Device

23.     On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) "Super Safety" ("the Infringing Device"), which embodies the technology claimed in the '247 and '784 Patents.

24.     On information and belief, Defendants sell or offer for sale the Infringing Device via the MaRs Trigger website www. marstrigger.com.

25.     The Infringing Device can be sold in three variations:

      a.  <u>A partial kit version</u>, which includes at minimum the cam and cam lever components, and may further include one or more additional components necessary, and specially designed, to practice the claimed invention of the '247 Patent, thereby contributing to and/or inducing patent infringement by those who install or use the components in a firearm. The partial kit version directly infringes the '784 Patent, as the cam and cam lever alone practice the claimed invention of the patent; and/or

      b.  <u>A complete kit version</u>, which includes all the components (the cam, the cam lever, a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger) necessary to practice the claimed invention and directly infringe the '247 and '784 Patents; and/or

      c.  <u>Pre-installed in a receiver and/or complete firearm</u>, which includes all the components (the cam, the cam lever, a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger) necessary to practice the claimed invention and directly infringe the '247 and '784 Patents.

26.     Exemplary photographs are shown below:



marstrigger.com/tactical-ar-forced-reset-trigger

**MARS TRIGGER LLC**

Home    Shop    Products    Installation Videos    Blog    GUNSMITH





# MaRs 3 Position AR FRT Super Safety

★★★★☆ (9)

**Hoffman AR FRT super safety design**

~~$199.95~~ $139.99

–  1  +    5+ in stock

Add to bag

**KEY FEATURES**    —

Key Features:
* 3-Position Selector: Switch between Safety, Semi-Auto, and Forced Reset for maximum flexibility.
* Forced Reset Mechanism: Achieve rapid firing speeds with precise control for enhanced accuracy.
* Precision Engineering: Expertly crafted for AR platforms, ensuring easy installation and flawless functionality.
* Durable Construction: Made from 4140 Alloy Steel (Hardened) for strength

Ex. C

7



Ex. D

27.    The Infringing Device also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

28.    The user can move the cam between safe, standard disconnector semiautomatic mode, and forced reset semiautomatic mode.

29.    Any provision of partial kits of the type described above would constitute the supply of components of a patented apparatus that form a material part of the invention. Such components are especially made or especially adapted for use in infringing the '247 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

30.    For the reasons explained in more specificity below, Defendants' Infringing Device, when provided as a complete kit or pre-installed in a receiver and/or complete firearm, directly infringes at least one claim of the '247 Patent and at least one claim of the '784 Patent and thus Defendants are liable for direct patent infringement pursuant to 35 U.S.C. § 271(a).

31.    For the reasons explained in more specificity below, Defendants' Infringing Device, when provided as a partial kit, directly infringes at least one claim of the '784 Patent and thus Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(a).

32.    For the reasons explained in more specificity below, Defendants' Infringing Device, when provided as a partial kit, indirectly infringes at least one claim of the '247 Patent and thus Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(b) and/or (c).

33.    In view of the Defendants' continued infringement, the infringement is willful.

## COUNT I –INFRINGEMENT OF THE '247 PATENT

34.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

35.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 patent. Such unlicensed products include the Infringing Device.

36.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 patent, including but not limited to Claim 15, literally and/or under the doctrine of equivalents.

9

37.    An exemplary comparison of the Infringing Device with claim 15 of the '247

Patent, when assembled and used as intended, is illustrated in the chart below:

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation. <br><br> <br> **Super Safety** <br> Ex. C, https://marstrigger.com/tactical-ar-forced-reset-trigger (January 10, 2026) <br><br> <br> **Super Safety** <br> Ex. E, Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange).<br><br><br><br>(Plaintiff-generated renderings of Super Safety here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br><br><br>**(Hammer Set Position Above)** |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| | **(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions.  The trigger member (Brown) has a sear. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions. |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| |  **(Trigger Member Set Position Above)** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position. <br><br> **(Trigger Member Released Position Above)** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red). |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| |  **(Disconnector Hook Engaged Above)** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket.  (*See* Image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)<br><br>**(Super Safety Cam with Lobe and Lever)** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| |  **(Cam and Lobe First Position Above)** In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode. **(Cam and Lobe Second Position Above)** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position. |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| said cam is in said first position, | |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| |  at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode, |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | <br><br>the cam is in the second position during the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook.<br><br> |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |

| Claim Language | Infringing Device (Super Safety) |
|---|---|
| at which time the user can pull said trigger member to fire the firearm. | at which time the user can pull the trigger member (Brown) to fire the firearm. |

38.    On information and belief, in addition to their direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising

(including by internet websites, YouTube videos, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products. Examples of such instruction is found on Defendants' website, one example is an installation instruction video:







Ex. D

39.    On information and belief, Defendants knows or should know that such activities induce others to directly infringe one or more of at least Claim 15 of the '247 Patent.  Around March 2025, the owner of Mars, Peter Brennan, attended a conference call with Lawrence DeMonico, President of Rare Breed, where it was explained that sales of the Infringing Device constituted infringement of the '247 Patent.

40.    On information and belief, Defendants also contributes to the infringement of the '247 patent by others, including their customers.  Acts by Defendants that contributes to the

infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the components of Infringing Device, such as the cam and cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

41.     Defendants have engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service and filing of this complaint and the aforementioned conference call with DeMonico.  Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '247 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '247 Patent.

42.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

43.     By their actions, Defendants' infringement of the '247 Patent have irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

44.     By their actions, Defendants' infringement of the '247 Patent have damaged and continues to damage, Plaintiffs in an amount yet to be determined.

45.    Defendants' infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '784 PATENT

46.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

47.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 Patent.  Such unlicensed products include the Infringing Device.

48.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 Patent, including but not limited to Claim 1, literally and/or under the doctrine of equivalents.

49.    An exemplary comparison of the Infringing Device with claim 1 of the '784 Patent, when assembled and used as intended, is illustrated in the chart below:

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| |  **Super Safety** Ex. C, https://marstrigger.com/tactical-ar-forced-reset-trigger (January 10, 2026) **Super Safety** Ex. E, Super Safety Guide at 12 |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | <br><br>**Super Safety Installed**<br>(Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity)<br><br>"The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently.  The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Ex. E, Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement. |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member. **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier. |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| |  **Unlocked Second Position** |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| the locking member having a body portion that is movably supported | The Super Safety has a body portion that is movably supported by the lower receiver.<br> |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Super Safety has an upwardly extending deflectable portion (lever arm). The dovetail connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in green).<br> |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| | Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving.<br><br><br><br>"The dovetail joint does not immediately transfer torque from the lever to the cam. The lever pivots in the cam until the void is filled. Once the void is filled the hammer can transfer torque to the cam via the upper and lower contact surfaces and. Note that the void, the lower contact surface, and the upper contact surface, are shown on arbitrary sides of the dovetail, these features may be on either side of the dovetail depending on which direction the lever is moving. The amount that the lever rotates in the dovetail before transferring torque to the cam is such that as the bolt carrier completes its forward movement, the cam rotates the neutral surface away from the cam follower and to a point where the cam follower begins to slide against the cam surface." (referenced numerals removed for clarity).  Ex. E, Super Safety Guide at 4. |

| Claim 1: Language | Infringing Device (Super Safety) |
|---|---|
| and a deflected position. | The lever is now shown deflected independent of the body.<br> |

50.     On information and belief, in addition to their direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '784 Patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, YouTube videos, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products. Examples of such instruction is found on Defendants' website, one example is an installation instruction video:





Ex. D

51.    On information and belief, Defendants know or should know that such activities induce others to directly infringe one or more of at least Claim 1 of the '784 Patent.  Around March 2025, the owner of Mars, Peter Brennan, attended a conference call with Lawrence DeMonico, President of Rare Breed, where it was explained that sales of the Infringing Device constituted infringement of the '784 Patent.

52.    On information and belief, Defendants also contribute to the infringement of the '784 Patent by others, including their customers.  Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Defendants of the components of Infringing Device, such as the cam and cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and

31

adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

53.    Defendants have engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service and filing of this complaint and the aforementioned conference call with DeMonico.  Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities.  As such, Defendants willfully infringe the '784 Patent.

54.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

55.    By their actions, Defendants' infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

56.    By their actions, Defendants' infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

57.    Defendants' infringement of the '784 Patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendants as follows:

a.    The '247 Patent has been and continues to be infringed by Defendants;

b.    Defendants' infringement of the '247 Patent has been, and continues to be, willful;

c.    The '247 patent is enforceable and not invalid;

d.    A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e.    A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

f.    An award of damages adequate to compensate Plaintiffs for the infringement of the '247 Patent that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g.    The '784 Patent has been and continues to be infringed by Defendants;

h.    Defendants' infringement of the '784 Patent has been, and continues to be, willful;

i.    The '784 Patent is enforceable and not invalid;

j.    A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries,

parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '784 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

k.    A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '784 Patent, or other such equitable relief as the Court determines is warranted;

l.    An award of damages adequate to compensate Plaintiffs for the infringement of the '784 Patent that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

m.    An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

n.    A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

o.    Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: January 12, 2026

Respectfully submitted,

*/s/ Matthew A. Colvin*_____
Matthew A. Colvin
Texas Bar No. 24087331
Carl E. Bruce
Texas Bar No. 24036278
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
        bruce@fr.com
Tel:  (214) 747-5070
Fax: (214) 747-2091

Ben Christoff (DC Bar No. 1025635)
FISH & RICHARDSON P.C.
1001 Maine Avenue SW, Suite 1000
Washington, DC 20024
E-mail: christoff@fr.com
Tel:  (202) 783-5070
Fax: (202) 783-2331

and

Glenn D. Bellamy (Ohio Bar No. 0070321)
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

*Attorneys for Plaintiffs*

35